RESTAURANT CONSULTING SER-
VICES, INC. and ASPEON,
INC., Plaintiffs,

v.

Theodore M. MOUNTZURIS Defendant.

No. CIV.A. 02–12177–WGY.

United States District Court,
D. Massachusetts.

March 12, 2003.

David P. Russman, Michienzie & Sawin, LLC, Boston, for Aspeon Inc., Restaurant Consulting Services Plaintiffs.

Kevin F. Moloney, Barron & Stadfield, Boston, for Theodore M. Mountzuris, Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

This case hinges on the objective interpretation of an employment agreement

and a severance agreement. The plaintiffs, Aspeon, Inc. and its subsidiary Restaurant Consulting Services, collectively referred to as "Aspeon–Consulting," claim that their severance agreement with the defendant, Theodore Mountzuris ("Mountzuris"), superseded their employment agreement with him. Therefore, Aspeon–Consulting claims that Mountzuris had no right to the arbitration and indemnification provisions in his employment agreement, and that his subsequent arbitration award against them should be vacated. The matter comes before the Court on cross-motions to vacate and confirm this arbitration award.

## A. Facts

On August 25, 1999, Mountzuris entered into an employment agreement with Aspeon–Consulting.[1] Def.'s Mem. in Supp. of Mot. to Confirm Arbitration Award ("Def.'s Mem.") [Docket No. 10] at 2. Under this agreement, it was agreed that Mountzuris would serve as Chief Executive Officer of Restaurant Consulting Services. Pls.' Mem. in Supp. of Mot. to Vacate Arbitration ("Pls.' Mem.") [Docket No. 14], Ex. A (Employment Agreement), Article 1.3.

The employment agreement included indemnification and arbitration provisions. With respect to indemnification, the agreement stated in Article 3.1(h) that:

> The Company shall indemnify Employee and hold Employee harmless for any acts or decisions made by him in good faith while performing services for the Company. . . . The Company shall pay all reasonable expenses, including attorneys fees, actually and necessarily incurred by the Employee in connection with the defense of any action, suit or proceeding and in connection with any

appeal thereon including the costs of any out of court settlement approved in advance by the Company, with respect to any acts or decisions which Employee shall have preformed [sic] or made in good faith in performing services for the Company. . . .

*Id.* at 2–3.

With respect to arbitration, Article 6.1 of the employment agreement stated that "any controversy, dispute or claim arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement" shall be arbitrated in accordance with the American Arbitration Association. *Id.* Article 6.1 further provided that "[a]ny controversy concerning whether a dispute is an arbitrable dispute or as to the interpretation or enforceability of this section 6.1 shall be determined by the arbitrator." *Id.* Article 7.8 of the employment agreement stated that Aspeon–Consulting's obligation to arbitrate, as set forth in 6.1 of the employment agreement, would "survive the termination of [Mountzuris'] employment regardless of the manner of such termination." *Id.*

The employment agreement also included a standard, unsigned "Release and Waiver of Claims" (the "standard waiver") as an addendum. Def.'s Opp'n to Mot. to Vacate Arbitration [Docket No. 15] ("Def.'s Opp'n"), Ex. C (standard waiver). The standard waiver stated, in pertinent part, that:

> I hereby release, and forever discharge the ***Company*** . . . from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of every kind and nature . . . arising at any time prior to and including my employment ***termination date*** with respect to

---

**1.** Aspeon was known at the time as Javelin Systems, Inc. and therefore, Javelin was the

company named in the employment agreement. Def.'s Mem. at 2.

any claims relating to my employment and the termination of my employment, including but not limited to, claims pursuant to any federal, state or local law relating to employment, including, but not limited to, discrimination claims ..., claims under the Massachusetts Fair Employment Practice Act, G.L. c. 15B, and claims under Chapters 149 through 154 of the Massachusetts General Laws, or claims for wrongful termination, breach of the covenant of good faith, contract claims, tort claims, ans wage or benefit claims, including but not limited to, claims for salary, bonuses, commissions, stock, stock options, vacation pay, fringe benefits, severance pay or any form of compensation.

*Id.*

On March 7, 2000, Mountzuris entered into a five year lease on behalf of Aspeon Solutions, Inc. (a subsidiary of Aspeon–Consulting) with Cummings Properties, LLC ("Cummings") for commercial office premises in Beverly, Massachusetts. Def.'s Mem. at 4–5. Several months later, on June 30, 2000, Mountzuris' employment with Aspeon–Consulting was formally terminated. *Id.* at 4.

The terms of Mountzuris' separation were formally dictated in a June 30, 2000 severance agreement (the "severance agreement"). *Id.; see* Ex. C (severance agreement). The severance agreement stated that Aspeon would pay Mountzuris his accrued salary, the cash value of his vacation and floating holiday days, a bonus, a payment for his consulting services, and a lump-sum severance payments. *Id.* In return for those payments, Mountzuris agreed to tender to Aspeon the "standard Release and Waiver of claims," i.e. the standard waiver. *Id.* The severance agreement also stated that Aspeon would pay Mountzuris the $150,000, plus interest, held in escrow pursuant to the parties'

Stock Purchase Agreement, and would also make a final payment under the Stock Purchase Agreement of $2,500,000 to Mountzuris. *Id.* at 2. Upon receipt of these payments, Mountzuris agreed that "I shall release any and all claims to any further payment otherwise due to me under the Stock Purchase Agreement as amended by the March 10, 2000 Letter Agreement, and both parties will execute and deliver mutual releases except as to those matters which by the term of this Letter Agreement shall continue in force...." (the "stock purchase waiver"). *Id.* at 3. This agreement was signed by Mountzuris and the Chief Executive Officer of Aspeon, Richard Stack, on June 30, 2000. *Id.*

Aspeon performed its obligations as called for under the severance agreement and paid Mountzuris in excess of $2,500,000. Pls.' Mem. at 2. Mountzuris never signed the standard waiver or executed and delivered the stock purchase waiver, despite Aspeon's payment in full of its obligation. *Id.*

About a year later, in June 2001, Aspeon Solutions defaulted in the payment of the approximate $20,000 per month rent due to Cummings on the lease that had been signed by Mountzuris in March 2000, back when he was still working for Aspeon–Consulting. Def.'s Mem. at 4. As a result, Cummings brought suit against Aspeon Solutions and Mountzuris. *Id.* at 5. Cummings asserted that Mountzuris was bound "to a personal guaranty of the Cummings lease" that Mountzuris had signed. *Id.* The Cummings suit, *Cummings, LLC v. Aspeon Solutions, Inc.*, Mass. Superior Ct., No. 0136 CV 0903, sought judgment for possession of the premises, liquidated damages in excess of $900,000, and attorneys fees. *Id.* at 4–5.

Mountzuris retained counsel for this state court action and mounted a rigorous

defense. *Id.* at 5. In a letter dated July 10, 2001, Mountzuris demanded that Aspeon–Consulting provide defense and indemnity under Article 3.1(h) of the employment agreement. Def.'s Mem. at 5; *see id.,* Ex. D (copy of letter). A bench trial commenced on April 11, 2002 and apparently concluded on December 12, 2002 after six trial days. Def.'s Mem. at 5.[2] Aspeon–Consulting refused to indemnify Mountzuris. *Id.* at 6. As a result, Mountzuris, in a letter dated January 4, 2002, demanded that Aspeon–Consulting submit to arbitration regarding the indemnification agreement. *Id.* at 6; *see id.,* Ex. E (copy of arbitration demand). The parties chose retired Massachusetts Superior Court Justice William W. Simons ("Simons") as Arbitrator. *Id.* at 6. On June 26, 2002, Arbitrator Simons conducted a scheduling conference, in which a discovery schedule was established and the arbitration hearing was set for October 21, 2002. *Id.*

On September 3, 2002, David Russman ("Russman") moved to withdraw as counsel to Aspeon–Consulting, asserting that there existed a "material disagreement" with Aspeon–Consulting. Def.'s Mem. at 6–7. On September 9, 2002, Arbitrator Simons allowed the motion, but stated in a written order that "[t]he hearing scheduled for October 21, 2002 [would] proceed without [Aspeon–Consulting] counsel unless new counsel for good cause, seeks a continuance of the hearing." *Id.* at 7.

On October 16, 2002, Arbitrator Simons conducted a status conference via telephone with the parties. *Id.* at 7. Attorney Russman, who had withdrawn from representing Aspeon–Consulting, was not a party to this conference call; instead, Aspeon–Consulting was represented by its Chief Financial Officer and by Frank Blundo, another Aspeon lawyer. Def.'s Mem. at 7.

During the conference call, Aspeon–Consulting orally requested a continuance of the hearing. *Id.* at 8. Arbitrator Simons denied the request and advised the Aspeon–Consulting representatives that the hearing would occur on October 21, 2002 as scheduled. *Id.*

On October 18, 2002, Aspeon–Consulting, through Attorney Russman, filed an "Emergency Motion to Continue Hearing," in order to investigate a "newly discovered defense," namely, the possibility that the Release and Waiver of Claims barred Mountzuris' claim for indemnification. Pls.' Mem., Ex. C (Emergency Motion to Continue Hearing) at 1–2. Aspeon–Consulting explained that they had "recently learned that there was a Release and Waiver of Claims attached to the employment agreement of the claimant, Theodore Mountzuris (the employment agreement through which Mountzuris seeks indemnification in this matter). If valid, it appears that the Release and Waiver of Claims would bar the current claim of Mountzuris, for indemnification, which is at the heart of this arbitration." On the same day, Arbitrator Simons heard oral argument on behalf of both parties. Def.'s Mem. at 9. Attorney Russman appeared for Aspeon–Consulting for the purposes of the emergency motion. *Id.* Arbitrator Simons ultimately denied the motion. *Id.*

At the October 21, 2002 hearing, Attorney Russman appeared for Aspeon–Consulting for the sole purpose of objecting to the hearing's occurrence. *Id.* at 10. Attorney Russman explained to the Arbitrator, "I am not representing the respondents.... [T]oday I'm here for the sole, limited purpose of objecting to the proceedings going forward, essentially on the same grounds that were articulated in the motion to continue.... [J]ust so it's clear,

---

**2.** It is not clear from the pleadings whether a judgment has yet issued.

[Aspeon–Consulting] will not be participating." Aff. of Kevin F. Moloney ("Moloney Aff.") [Docket No. 5], Tab 1 (Transcript of the October 21, 2002 hearing) at 6, lines 6–21. Attorney Russman then left the proceeding, and the hearing went forward. *Id.* at 8, lines 16–18.

On November 5, 2002, through Attorney Russman, Aspeon–Consulting moved for further hearing or alternatively to stay the arbitration. Pls.' Mem. at 4; *see id.*, Ex. D (copy of motion). In this motion, Aspeon–Consulting argued that the standard release barred Mountzuris' indemnification claim. Arbitrator Simons denied the motion, stating that "the hearing was duly closed on October 21, 2002" that he had already submitted his Decision and Award to the American Arbitration Association on October 29, 2002, and that the "proposed evidence in any further hearing was known or available to [Aspeon–Consulting] at the time of the [October 21, 2002] hearing." Def.'s Mem., Ex. H (Decision of Arbitrator on Respondent's Motion for Further Hearing) at 1.

On November 6, 2002, Aspeon–Consulting filed a complaint in this Court, through Attorney Russman, alleging that Mountzuris had breached his severance agreement and seeking to stay the Arbitration. Pls.' Motion to Stay Arbitration [Docket No. 2] at 1. Aspeon–Consulting argued that it had a "viable defense" to Mountzuris' action against it, "in the form of a release and waiver of claims that Mountzuris was required, but failed, to execute when his employment with Aspeon was terminated," and asked this Court to compel Mountzuris to execute the release and waiver. *Id.* This Court denied the motion on November 7, 2002 and administratively closed the case subject to being reopened by either party.

On November 19, 2002, Arbitrator Simons issued a Decision and Award in favor of Mountzuris. Def.'s Mem. at 11. Specifically, Arbitrator Simons found Aspeon–Consulting liable for $293,849.13 for past attorney's fees and state court costs and liable for future fees and costs that "actually and necessarily may be incurred by Mountzuris in the on-going defense of the [state court action] and including any appeal by any party thereto of any judgment entered therein." *Id.*, Ex. A (Award of Arbitrator), at 4–5. Furthermore, Arbitrator Simons found Aspeon–Consulting liable for any "funds that Mountzuris may make to any settlement" and "any final judgment as may be entered in the [state court action] against Mountzuris." *Id.* at 5.

On November 29, 2002, Mountzuris moved to reopen the case in this Court and to confirm the November 19, 2002 Decision and Award of the Arbitrator. On December 13, 2002, Aspeon–Consulting moved to vacate the Decision and Award of the Arbitrator.

### B. Federal Jurisdiction

This Court has diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332. Both plaintiffs (Restaurant Consulting Services, Inc. and Aspeon, Inc.) are incorporated in Delaware with a principal place of business in California. Compl. ¶¶ 1–2. Mountzuris has a last and usual address in Massachusetts. *Id.* ¶ 3.

### II. DISCUSSION

Aspeon–Consulting advances four reasons why this Court should vacate the arbitral award in favor of Mountzuris: (1) that the arbitration provision of the Employment Agreement was no longer in effect at the time of the arbitration, Pls.' Mem. at 6–10; (2) that Arbitrator Simons exceeded his authority in determining that Aspeon–Consulting owed a duty of indemnification to Mountzuris, *id.* at 10–11; (3)

that Arbitrator Simons refused to postpone the arbitral hearing upon sufficient cause shown, *id.* at 11–14; and (4) that Arbitrator Simons refused to hear evidence material to the controversy, *id.* at 14–16. The Court begins by addressing two threshold legal matters, and then turns to each of these claims.

## A. Threshold Legal Matters

### 1. Choice of Law

■ Article 7.7 of the employment agreement states that "[t]he validity, interpretation, construction, performance, enforcement and remedies of or relating to this Agreement, and the rights and obligation of the parties hereunder, shall be governed by the substantive laws of Massachusetts." Employment Agreement at 9. Because the agreement calls for the use of Massachusetts law in determining the rights and obligation of the parties, the Massachusetts Uniform Arbitration Act, rather than the Federal Arbitration Act, applies.[3] *In re Newport Plaza Associates, L.P. v. Durfee Attleboro Bank,* 985 F.2d 640, 644 (1st Cir.1993) ("When opposing parties agree to the source of the substantive law that controls their rights and obligations, and no jurisdictional concerns are present, a court is at liberty to accept such an agreement without independent inquiry."). Likewise, in determining whether Mountzuris is bound to the waivers (despite not having tendered them) and whether the severance agreement supersedes the employment agreement, this Court will apply the substantive laws of the state of Massachusetts.

### 2. Presumption of Arbitrability

■ Where the contract contains an arbitration clause, there is a presumption of arbitrability. As explained by the Supreme Court, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Supreme Court further stated that "in the *absence* of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a *purpose to exclude* the claim from arbitration can prevail." *Id.* at 584–585, 80 S.Ct. 1347 (emphasis added).

## B. Aspeon–Consulting's Claims

### 1. Was the Arbitration Provision In Effect at the Time of the Arbitration?

It is undisputed that indemnification and arbitration clauses existed as part of Mountzuris' original employment agreement. Aspeon–Consulting claims, however, that this agreement was superseded by the June 30, 2000 severance agreement and the two waivers referenced therein. Pls.' Mem. at 7. In essence, Aspeon–Consulting claims that neither the arbitration nor indemnification clauses were still in effect when Cummings brought suit and when Mountzuris subsequently pursued arbitration with Aspeon–Consulting in order to resolve his indemnification claim. Therefore, Aspeon–Consulting argues, the November 19, 2002 indemnification award resulting from the arbitration should be vacated, because there was no binding arbitration agreement in effect at that time.

---

**3.** The parties have not disputed that Massachusetts law applies. In fact, Aspeon–Consulting has asserted that the Massachusetts Uniform Arbitration Act controls, and Mountzuris has not disputed this. *See* Pls.' Mem. at 5.

■ Under Massachusetts law, "[u]pon application of a party, the court shall vacate an award if . . . there was no arbitration agreement and the issue was not adversely determined in proceedings under section two [that is, proceedings in the Superior Court] and the party did not participate in the arbitration hearing without raising the objection." Mass. Gen. Laws, ch. 251, § 12(a)(5). Here, the issue of whether there was an arbitration agreement has not been determined in any proceeding, and Aspeon–Consulting *did* raise an objection to participating in the arbitration proceedings, as noted above. Therefore, this Court may determine whether an agreement to arbitrate was indeed in effect at the time of the arbitration. *See Parekh Construction, Inc. v. Pitt Construction Corp.*, 31 Mass.App.Ct. 354, 358–59, 577 N.E.2d 632 (1991) (noting that a party can raise the question of whether an arbitration agreement existed after an arbitrator makes a decision if the above requirements are met).

As noted above, despite receiving the promised payments from Aspeon–Consulting pursuant to the severance agreement, Mountzuris did not tender the waivers referenced in the severance agreement, as he had promised to do by signing the agreement. Mountzuris does not attempt to argue that he is therefore not bound by those waivers; instead, he argues that even had he tendered those waivers, they would not supersede the employment agreement in full. Def.'s Opp'n at 5. The Court thus moves directly to an assessment of whether the severance agreement, pursuant to those waivers, superseded the employment agreement in its entirety, such that the arbitration and indemnification provisions were no longer in effect at the time of the hearing before Arbitrator Simons.

Aspeon–Consulting argues that the severance agreement is a "new contract"—either a "novation" or an "accord and satisfaction"—that supersedes the employment agreement. Pls.' Mem. at 7–8. Therefore, it argues, the arbitration and indemnification provisions of the employment agreement were no longer in effect at the time of the arbitral hearing before Arbitrator Simons. Pls.' Mem. at 10.

■ Technically speaking, there are doctrinal distinctions between an accord and satisfaction, a substituted contract, and a novation. As the Restatement (Second) of Contracts explains, an "accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." *Id.* at § 281 (1981). By contrast, "a substituted contract is a contract that is itself accepted by the obligee in satisfaction of the obligor's existing duty." *Id.* at § 279. A novation is one type of substituted contract—namely, one that "includes as a party one who was neither the obligor nor the obligee of the original duty." *Id.* at § 280.[4]

■ The First circuit has suggested that "when it would serve no useful purpose to distinguish between accord and

---

4. The Massachusetts Supreme Judicial Court places significant reliance on the Restatements of the Law. Remarks of the Hon. Judith Cowin, Associate Justice of the Massachusetts Supreme Judicial Court, Massachusetts Academy of Trial Attorneys seminar, March 7, 2003. The Hon. R. Ammi Cutter, Associate Justice of the Supreme Judicial Court, noted as one of the "passionate, brilliant jurists who shaped the Commonwealth's system of justice," *Legal Chowder*, Rudolph Kass ed. (MCLE, 2002) 119, 139–40, was the President of the American Law Institute (1976–1979), which issues the Restatements of the Law, and also served as the Chair of the Institute's Council (1980–1987). Likewise, former Chief Justice Herbert P. Wilkins serves on the Council of the Institute.

satisfaction, on the one hand, and novation, on the other hand, courts should refrain from performing what will amount to no more than an exercise in semantics." *In re Newport Plaza Associates, L.P.,* 985 F.2d at 644. Indeed, for the purposes of this case, it is unnecessary to reach the question of whether, *if* the severance agreement supersedes the employment agreement in full, it does so as an accord and satisfaction, substituted contract, or novation. Rather, the crucial question is the initial matter of whether the severance agreement *does* supersede the employment agreement in the first place.

■ This is a matter of contract interpretation, and is a question of law for the Court. As the court explained in *Community Builders, Inc., v. Indian Motorcycle Associates, Inc.,* when a "new agreement is oral and the words used are in dispute, the question [of intention] becomes one for a jury." 44 Mass.App.Ct. 537, 548, 692 N.E.2d 964 (1998) (internal citations and quotation marks omitted). By contrast, where "the material facts are not in dispute, and the question of the parties' intention turns on the language of the original and revised written agreements, the question of intention [is] to be determined by the usual process of interpretation, implication, and construction. The question in

such cases is one of law for the court." *Id.* (internal citations and quotation marks omitted). Here, because the material facts are not disputed [5] and neither party has alleged that intent should be inferred from anything but the language of the written agreements themselves, the Court can decide the matter through interpretation, implication, and construction of the contracts. *See also Tuttle v. Metz Co.,* 229 Mass. 272, 275, 118 N.E. 291 (1918) (noting that construction of an agreement that is in writing is matter of law for a court to decide); *Lewis v. Commonwealth,* 332 Mass. 4, 6, 122 N.E.2d 888 (1954) (same); *Lipson v. Adelson,* 17 Mass.App.Ct. 90, 92, 456 N.E.2d 470 (1983) (same).

For the Court to infer that the severance agreement fully superseded the employment agreement, there would need to be a clear indication to that effect in the language of the severance agreement. *See Williams v. B .& K Medical Systems, Inc.,* 49 Mass.App.Ct. 563, 570, 732 N.E.2d 300 (2000) (highlighting the importance of a clear indication on the part of the parties to make an accord and satisfaction); *Pagounis v. Pendleton,* 52 Mass.App.Ct. 270, 273, 753 N.E.2d 808 (2001) (noting that a substituted contract can be inferred but only by a "clear and definite indication" of intent) (citations omitted); *Simkins Indus-*

5. Aspeon–Consulting has now claimed that there are questions of fact surrounding the releases. With respect to the standard release, it argues that—despite its statements to the contrary in its Complaint and its Emergency Motion to Continue Hearing—it is not clear that the "standard release" referred to in the severance agreement was in fact the same release that was attached to Mountzuris' original employment agreement. Pls.' Opp'n to Def.'s Motion for Leave to File A Post Hearing Memo at 2 [Docket No. 19]. This Court rules, however, that Aspeon–Consulting is bound by the above assertion of fact that it made in its complaint in regard to this release. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co., Inc.,* 976 F.2d 58, 61 (1st Cir.1992) ("A party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding.") (internal quotation marks omitted). Aspeon–Consulting also claims that "it is unclear what form [the stock purchase waiver] was to take." Pls.' Opp'n to Def.'s Motion for Leave to File A Post Hearing Memo at 3. For the purposes of determining whether the severance agreement superseded the employment agreement, however, the severance agreement's language that Mountzuris "shall release any and all claims to further payment otherwise due to me under the Stock Purchase Agreement as amended by the March 2000 Letter Agreement" is sufficiently clear.

*tries, Inc. v. Jeppson, III,* 402 F.Supp. 1265, 1267 (D.Mass.1975) (Caffrey, J.) (emphasizing the importance of a clear indication on the part of all parties to make a novation).

█ Here, the Court can find no clear indication that the severance agreement, pursuant to the standard and stock purchase waivers referenced therein, was intended to supersede the employment agreement in full, and thereby extinguish the indemnification and arbitration provisions of the employment agreement. The Court begins with an examination of the standard waiver, which Mountzuris was to sign pursuant to the severance agreement. The standard waiver can indeed be seen as clearly indicating the parties' assent to the release of Aspeon–Consulting from liability and indemnification for *prior* claims, as well as (impliedly) the duty to arbitrate those claims. There was no such mutual assent, however, with regard to claims arising *after* Mountzuris' termination date. It is true that the standard waiver releases Aspeon–Consulting "from any and all claims, liabilities, demands, causes of action, costs, expenses, attorneys' fees, damages, indemnities and obligations of any kind and nature." Standard Waiver at 1. In the very same sentence, however, the standard waiver specifically limits the release to cover only those claims "arising any time *prior to* and *including* my employment termination date." *Id.* (emphasis added). Moreover, two paragraphs later, the standard waiver reiterates that "the Release and Waiver granted herein does not relate to claims which may arise *after* this Release and Waiver is executed." *Id.* (emphasis added).

As such, the Court rules that the standard waiver did not supersede the employment agreement in its entirety. On the contrary, it superseded it only with respect to claims arising on or before June 30,

2000, which was Mountzuris' termination date. The event giving rise to the present litigation—namely, Aspeon–Consulting's default on the Cummings lease—occurred in June 2001, nearly a full year after that point. Accordingly, the Court rules that the employment agreement's indemnification provision still applies to that default.

Given the survival of that claim, there is no justification for construing the standard waiver to bar arbitration as the method for resolving that claim. On the contrary, Article 7.8 of the employment agreement stated that the duty to arbitrate would "*survive* the termination of [Mountzuris's] employment, regardless of the manner of such termination" (emphasis added). Furthermore, Article 7.3 stated that "no modification, termination, or attempted waiver of any other provisions of this Agreement will be valid unless in writing signed by all parties hereto." The standard waiver did not even mention the arbitration provision of the employment agreement, let alone suggest that it had been extinguished. Therefore, the Court construes the standard waiver to preserve the duty to arbitrate those claims arising after Mountzuris' employment agreement, such as Mountzuris' current claim for indemnification.

Aspeon–Consulting argues that the stock purchase waiver mentioned in the severance agreement is another indication that the severance agreement supersedes the employment agreement, and, alternatively, that the stock purchase waiver itself acts as an independent bar to Mountzuris' claim for indemnification. Pls.' Mem. at 8; Pls.' Opp'n to Def.'s Motion for Leave to File A Post Hearing Memo at 3. In pertinent part, the severance agreement states that "[u]pon receipt of the final payment [$2,500,000], I shall release any and all claims to any further payment otherwise due to me under the *Stock Purchase*

*Agreement* as amended by the March 10, 2000 Letter Agreement" (emphasis added). Severance Agreement at 3. This statement refers directly and unambiguously to the stock purchase agreement and not to the employment agreement. Moreover, it refers to claims for *payment due* under the Stock Purchase Agreement, not to claims for indemnification, nor to a duty to arbitrate those claims. *Id.* Thus, even if the stock purchase waiver is, as Aspeon–Consulting argues, "broader than the form referenced in the First Release Requirement," Pls.' Opp'n to Def.'s Motion for Leave to File A Post Hearing Memo at 3, Mountzuris still agreed only to waive rights as they related to the stock purchase agreement—not as they related to the employment agreement. Therefore, this waiver cannot cause the severance agreement to supersede the obligation to arbitrate set out in the employment agreement, given that the duty to arbitrate was described as surviving Mountzuris' termination.

As such, there is no language in the severance agreement or either of the two waivers referenced therein that clearly indicates that Mountzuris agreed to release Aspeon–Consulting from liability or indemnification for claims arising *after* his termination date, or to forgo arbitration for those claims. While the severance agreement, pursuant to the two waivers referenced therein, did operate to alter Aspeon–Consulting's liability to Mountzuris for (1) claims relating to Mountzuris' employment and the termination of his employment and (2) claims for payment due under the stock purchase agreement, this Court rules that they did not alter Aspeon–Consulting's responsibility to indemnify Mountzuris for claims arising *after* Mountzuris' employment termination date, nor its obligation to arbitrate claims relating to such indemnification. In short, the employment agreement was not superseded in its entirety by the severance agreement, and there was an existing arbitration agreement at the time of the arbitration.

### 2. Did the Arbitrator Exceed His Authority?

■ Under Massachusetts law, another basis for the vacation of an arbitral award is that "the arbitrators exceeded their powers." Mass. Gen. Laws ch. 251, § 12(a)(3). Aspeon–Consulting argues that Arbitrator Simons exceeded his power when he determined that Aspeon–Consulting has a duty to indemnify Mountzuris under the employment agreement, given that—in Aspeon–Consulting's view—the employment agreement was superseded by the severance agreement. Pls.' Mem. at 10–11. For the reasons stated above, this Court rules that the severance agreement did not supersede the employment agreement in full, and that the duty to indemnify Mountzuris for claims arising after his termination remained. Accordingly, the Arbitrator did not exceed his authority in issuing an order to that effect.

### 3. Was There Sufficient Cause to Postpone the Arbitration Hearing?

■ Yet another basis for the vacation of an arbitral award is that "the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor." Mass. Gen. Laws. ch. 251, § 12(a)(4). Aspeon–Consulting argues that it "needed more time to investigate meritorious defenses" because the arbitration had progressed "extremely quickly," and that Arbitrator Simons would not have prejudiced Mountzuris by granting the motion. Pls.' Mem. at 11.

Aspeon–Consulting's related theories that the severance agreement and waivers supersede the employment agreement are

the main thrust of the "meritorious defenses" to which it refers.[6] *Id.* at 11–14; *see also id.*, Ex. C (Emergency Motion to Continue Hearing) at 1. This Court has already concluded that those defenses were not, in fact, meritorious. Moreover, as Arbitrator Simons has pointed out, "the proposed evidence in any further hearing was known or available to Aspeon–Consulting at the time of the hearing." Def.'s Mem., Ex. H (Decision of Arbitrator on Respondent's Motion for Further Hearing) at 1. Indeed, it is undisputed that the severance agreement and the standard waiver (which was attached to the original employment agreement) were available to Aspeon–Consulting from the outset of—indeed, prior to—this litigation. The Chief Executive Officer of Aspeon signed the severance agreement on June 30, 2000, well before this litigation began. Moreover, the standard waiver was attached to the original employment agreement, which was signed on August 25, 1999. Aspeon, Inc.'s lack of a copy of Mountzuris' *signed* standard waiver in no way hindered it from developing its defense that the waiver superseded the severance agreement, given its possession of a copy of the severance agreement, wherein Mountzuris promised to sign the standard waiver.

Therefore, because Aspeon–Consulting had the information necessary to develop these "meritorious defenses" from the outset of the litigation, and because the defenses were in fact unlikely to succeed on the merits, there was not sufficient cause to postpone the hearing.

### 4. Did the Arbitrator Refuse to Hear Material Evidence?

 Aspeon–Consulting's final asserted basis for the vacation of the arbitral award is that Arbitrator Simons refused to hear evidence material to the controversy. *See* Mass. Gen. Laws. ch. 251, § 12(a)(4) ("Upon application of a party, the court shall vacate an award if . . . the arbitrators . . . refused to hear evidence material to the controversy."). Aspeon–Consulting argues that Arbitrator Simons refused to hear evidence material to the controversy when he refused to grant its Motion for Further Hearing or, Alternatively, To Stay the Arbitration, which Aspeon–Consulting filed on November 5, 2002. It was Aspeon–Consulting, however, that refused to present evidence at the October 21, 2002 hearing, at which point all of the evidence underlying its purported defenses (namely, the severance agreement and the waivers referenced therein) was available. Further, even had Attorney Russman presented the evidence, it likely would not have succeeded on the merits, as discussed above.

## III. CONCLUSION

There is no indication in the severance agreement, pursuant to either of the waivers referenced in the severance agreement, that Mountzuris and Aspeon–Consulting intended the severance agreement to supersede the employment agreement in its entirety. On the contrary, the standard waiver explicitly states that it does not release Aspeon–Consulting from claims arising *after* Mountzuris' employment date, and the employment agreement clearly states that the parties intended to preserve the right of arbitration regardless of Mountzuris' termination. Therefore, this Court rules that the arbitration agreement set out in the employment

---

**6.** Aspeon–Consulting also alleged a need to investigate whether Attorney Betcher's claims for fees and costs associated with representing Mountzuris could be defeated on the grounds that Betcher had a conflict of interest. Pls.' Mem. in Supp. of Mot. to Vacate Arbitration [Docket No. 14], Ex. C, Emergency Motion to Continue Hearing at 2.

agreement was in effect at the time the Cummings suit arose, and that Mountzuris had a viable claim against Aspeon–Consulting for indemnification. Additionally, since there is no "express provision excluding ... [this] particular [type] of grievance from arbitration," *United Steelworkers of America,* 363 U.S. at 584–85, 80 S.Ct. 1347, and there are no valid reasons to vacate the award, this Court concludes that the award of the Arbitrator ought be, and hereby is, confirmed.

This result is supported by Massachusetts' strong public policy in favor of arbitration. *See, e.g., City of Lawrence v. Falzarano,* 380 Mass. 18, 28, 402 N.E.2d 1017 (1980) ("The purpose of G.L. c. 251 governing arbitration is to provide further speedy resolution of disputes ... [and] judicial review of arbitration is confined to certain narrow grounds."). Moreover, here it is clear that Mountzuris should be indemnified by Aspeon–Consulting as matter of substantive fairness. Mountzuris was acting, in good faith, as an agent of Aspeon–Consulting when he entered into the lease agreement with Cummings. Aspeon–Consulting's default on the lease did not occur until after Mountzuris' employment had been terminated, and thus it seems that factors entirely beyond Mountzuris' control or influence contributed to that default. The purpose of an indemnification agreement is to shift liability from the corporate officer to the corporation, and this case demonstrates the importance of such agreements.

Accordingly, Mountzuris' motion to confirm the arbitration award [Docket No. 10] is ALLOWED, and Aspeon–Consulting's motion to vacate the arbitration award [Docket No. 13] is DENIED.

SO ORDERED.