SIDNEY J. LIPSON vs. SHELDON G. ADELSON & another.[1]

Middlesex. March 16, 1983. — November 16, 1983.

Present: ARMSTRONG, KAPLAN, & KASS, JJ.

*Negotiable Instruments,* Accommodation party. *Contract,* Novation, Consideration. *Accord and Satisfaction.*

An agreement in the nature of an accord by which a husband acknowledged that he and his wife were indebted to the plaintiff on a promissory note, and by which the parties agreed to a moratorium on payment of the debt, was not intended to be in itself a satisfaction and, not being fully performed, did not discharge the husband and wife from liability on the note. [92-96]

CIVIL ACTION commenced in the Superior Court Department on April 27, 1979.

A motion for summary judgment was allowed, as to Sandra Adelson, by *Linscott,* J., and as to Sheldon G. Adelson, by *Connolly,* J. Judgment was ordered by *Mitchell,* J.

*Ira H. Zaleznik* for the defendants.

*Edward Rabinovitz (Roger B. Sherman* with him) for the plaintiff.

ARMSTRONG, J. On May 1, 1970, the defendants signed a promissory note for $7,500, payable in ninety days, with interest at eighteen percent per annum. The plaintiff signed the note as an accommodation party, and, when the defendants failed to pay the note off at maturity, the plaintiff was asked to, and did, pay the holder. In 1979 the plaintiff brought this action to collect on the note and recovered a judgment under Mass.R.Civ.P. 56(a), 365 Mass. 824 (1974). The defendants appeal.

The principal issue raised by the appeal concerns the effect of an agreement signed by the plaintiff, the defendant

---

[1] Sandra Adelson.

Sheldon G. Adelson (hereafter, "Adelson"), and one Shapiro in April, 1973. The defendants contend that the 1973 agreement was, in effect, a substituted contract, comparable to those in *Bigelow* v. *Baldwin,* 1 Gray 245 (1854); *First Natl. Bank* v. *Watkins,* 154 Mass. 385 (1891); *Woods* v. *Sherer,* 186 Mass. 562 (1904); *Tuttle* v. *Metz Co.,* 229 Mass. 272 (1918); and *Adams* v. *Herbert,* 345 Mass. 588 (1963); and that it had the effect of immediately discharging the defendants from liability on the note. In addition, they argue that the defendant Sandra Adelson ("Mrs. Adelson"), not a party to the 1973 agreement, was discharged in accordance with G. L. c. 106, § 3-606(1)(*a*), by the plaintiff's having agreed to give Adelson a moratorium on repaying the debt without the consent of Mrs. Adelson and without an express reservation of rights. See *Stanley* v. *Ames,* 378 Mass. 364, 367-369 (1979).

The 1973 agreement listed four debts of Adelson to the plaintiff, one of which was the promissory note here in issue. Adelson acknowledged each of those debts and the interest due thereon at the time. The agreement recited that Adelson had requested a three-year moratorium on payment of these debts; that the third party, Shapiro, was holding, by assignment from Adelson, an option to purchase certain common stock at fifteen cents per share; that the plaintiff asserted (although Adelson and Shapiro denied) that Shapiro was holding the option as a nominee for Adelson; that the plaintiff had lawsuits pending against Adelson and Shapiro; and that all three intended "to provide for their respective rights and obligations on an amicable out of court basis." The agreement then provided that the plaintiff would give the Adelsons a three-year moratorium on paying principal on the several debts; that the interest then due would be totalled and divided by thirty-six, and that each month during the moratorium Adelson would make a payment to the plaintiff consisting of a thirty-sixth part as thus computed plus interest at the rate of seven and a half percent per annum on the principal amounts owed; that by the end of the three years Adelson would have paid off all the principal

obligations; that the plaintiff would give Shapiro the funds to exercise the option and acquire the stock; that the stock would be held in escrow, to secure Adelson's debts to the plaintiff, subject to Adelson's paying off each of his principal and interest obligations and repaying also the funds advanced to Shapiro to exercise the option; and that the plaintiff would cause his suits against Adelson and Shapiro to be dismissed.

The stock option was exercised and the shares were put in escrow; but it is not denied that Adelson failed to make the payments of interest and principal contemplated by the 1973 agreement. The question thus arises whether that agreement was merely an executory accord, partial satisfaction of which would not discharge the underlying obligations, *Sherman* v. *Sidman*, 300 Mass. 102, 106 (1938); or was instead a substituted contract, the mere execution of which was intended by the parties to constitute both the accord and the satisfaction, thus discharging the several preexisting debts.

The interpretation of the written 1973 agreement is a question of law for the court rather than one of fact for the jury. *Tuttle* v. *Metz Co.*, 229 Mass. at 275. *Lewis* v. *Commonwealth*, 332 Mass. 4, 6 (1954). *St. Germain & Son* v. *Taunton Redev. Authy.*, 4 Mass. App. Ct. 46, 51 (1976). *Poskus* v. *Braemoor Nursing Home*, 6 Mass. App. Ct. 896, 897 (1978). It has been observed that an intention that the accord itself should operate to discharge a preexisting indebtedness is unusual and that such should be made to appear specifically or by clear implication from the writing. *Banionis* v. *Lake*, 289 Mass. 146, 148 (1935) ("[S]uch a satisfaction is unusual, and presumably was not intended"). *Sherman* v. *Sidman*, *supra* at 106 ("An unexecuted accord does not discharge the original claim . . ., unless it appears that the parties intended that the agreement constituting the accord, and not performance thereof, should effect such a discharge . . . . But such an intention is unusual"). *McFaden* v. *Nordblom*, 307 Mass. 574, 576 (1940) ("An intention that the agreement shall be both the accord and satisfaction is unusual."). A finding to that effect should be based on a clear and definite indication in the agreement

that such is the intention of all concerned.  See 58 Am. Jur. 2d Novation § 20, at 534 (1971).

Here the parties focus on particular sentences or phrases in the agreement as suggesting an intention one way or the other.  The defendants focus particularly upon a clause in the 1973 agreement relative to the plaintiff's power to sell the pledged stock in the event of a default, after which he could "retain for himself the total sum due to [the plaintiff] from Adelson pursuant to this Agreement," suggesting, the defendants contend, that the 1973 agreement should be the measure of the indebtedness rather than the preexisting obligations.  They focus also on the lower rate of interest provided for in the 1973 agreement (seven and one-half percent) than that payable under the provisions of the note (eighteen percent); and, again, on a discrepancy between the amount acknowledged by Adelson to be due on the note and the higher amount which the holder would be entitled to if interest were computed at the rate of eighteen percent to the date of the 1973 agreement.[2]  The defendants also stress the language in the 1973 agreement concerning the parties' desire to effect an out of court settlement, suggesting that the agreement should be regarded as a resolution of disputed claims.[3]

---

[2] The difference seems to have arisen because the plaintiff paid off the original holders of the note at a discount.  If the plaintiff is precluded from suing on the original note and must sue, if at all, on the 1973 agreement, despite Adelson's breach of that agreement, one effect will be to give Adelson the benefit of the discount.  Adelson has not argued, and we do not consider, the question whether an accommodation maker who pays off a note at a discount is subrogated to the original rights of the holder or is, rather, required to pass on the discount to the person or persons primarily liable on the note.  Compare *Quimby* v. *Varnum*, 190 Mass. 211 (1906), with Comment 5 to § 3-415 of the Uniform Commercial Code 2 U.L.A. (Master ed. 1977).

[3] Compare Restatement (Second) of Contracts § 279 comment c (1981). "Whether a contract is a substituted contract or an accord is a question of interpretation . . . . . In resolving doubts in this regard, a court is less likely to conclude that an obligee was willing to accept a mere promise in satisfaction of an original duty that was clear than in satisfaction of one that was doubtful.  It will therefore be less likely to find a substituted contract and more likely to find an accord if the original duty was one to pay money, if it was undisputed, if it was liquidated and if it was matured."

The plaintiff, by contrast, relies particularly on the moratorium clause, which repeatedly uses the words "principal obligations," or "obligations," in the plural, in reference to both the moratorium period and the period thereafter. The plaintiff reads this as an indication that the parties regarded the several debts acknowledged by Adelson as surviving the execution of the 1973 agreement.

In none of these nuances of expression do we see a clear indication of the parties' intent. The very uncertainty of the 1973 agreement in this respect suggests to us that it may never have occurred to the parties to wonder whether the original debts would survive the agreement. We recognize that a substituted contract or novation may be inferred despite a lack of express language to that effect. See *Zlotnick v. McNamara*, 301 Mass. 224, 226 (1938). But the 1973 agreement gives no firm basis for such an inference. In the abstract, we can agree with the defendants that inconsistency between two agreements can be an indication of substitution. See 6 Corbin, Contracts § 1296 (1962). But any accord, by definition, involves a substituted performance; and to bring a case within the inconsistency principle the substitution should be such as to show a contradictory intention, as, for example, if a second contract should call for the building of a house according to a different set of plans from those contemplated originally. See *Opdyke & Butler v. Silver*, 111 Cal. App. 2d 912 (1952). A revised payment schedule, intended to accommodate a debtor in distress, has no tendency to suggest that the creditor would find payment by the original timetable disagreeable. Nor would an intention to work out a settlement and avoid litigation by itself indicate an intention to discharge preexisting obligations. Compare *Emerson v. Atkinson*, 159 Mass. 356, 358-359 (1893).

In both *Bigelow v. Baldwin, supra,* and *Tuttle v. Metz Co., supra,* there was explicit language in the writings showing an intention to relinquish present obligations in return for promises of future performance.[4] The same intention

---

[4] In *Bigelow v. Baldwin,* the language was: "And they [the creditors] do hereby . . . accept said property and covenants in full satisfaction and

appeared from oral statements alleged to have been made in *First Natl. Bank* v. *Watkins, supra.*[5] The settlement agreements in *Woods* v. *Sherer* and *Adams* v. *Herbert,* both *supra,* were oral and were the subject of conflicting testimony which was not reported.

The further point is made that the 1973 agreement, if it did not discharge Adelson, who was a signatory, at least discharged his wife, who was not a signatory and did not consent to the moratorium. The provision relied on, § 3-606 (1)(a) of the Uniform Commercial Code (G. L. c. 106, § 3-606[1][*a*], inserted by St. 1957, c. 765, § 1), states: "The holder discharges any party to the instrument to the extent that without such party's consent the holder . . . without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person." But "[c]onsent may be given in advance, and is commonly incorporated in the instrument", § 3-606, comment 2, of the Uniform Commercial Code 2 U.L.A. (Master ed. 1977); and such was the case here, as the note stated: "Each such party hereby . . . waives any defense by reason of any extension of time for payment or other indulgence granted to any party liable hereon." Compare *Federal Deposit Ins. Corp.* v. *Hill,* 13 Mass. App. Ct. 514, 518 (1982). Moreover, Mrs. Adelson made no showing she would have had a right of recourse against her husband. See *Wohlhuter* v. *St. Charles Lumber & Fuel Co.,* 62 Ill. 2d 16, 20 (1975). Contrast *Beneficial Finance Co.* v. *Husner,* 82 Misc. 2d 550, 552 (N.Y. Sup. Ct. 1975).

---

discharge of all such their respective debts and demands against said parties of the first part . . . ." 1 Gray at 248. In *Tuttle* v. *Metz Co.*, the language was: "[I]f during next January you do give us an order for our service during 1916 at $200.00 per month we will cancel the amount of $900.00 [owed for 1915]." 229 Mass. at 274. (The service was ordered in January but terminated in August.)

[5] The mortgagee of property agreed to "look to the mortgaged property alone for the payment of the note", which was said to be, in effect, an agreement to discharge the defendant individually from all liability on the note. 154 Mass. at 387.

Other points are argued by the Adelsons, but the points have no merit. The contention that the plaintiff agreed orally at one time to accept ten cents on the dollar in full satisfaction would not be binding on him even if it were proved true. The Adelsons' obligations to the plaintiff being liquidated and undisputed, a promise to accept part payment would lack consideration. See *Perkins* v. *Lockwood,* 100 Mass. 249, 249-250 (1868); *First Natl. Bank* v. *Cartoni,* 295 Mass. 75, 78 (1936); *Sloan* v. *Burrows,* 357 Mass. 412, 415 (1970). If the claims had been unliquidated or disputed, still the Adelsons offered at most to prove an unexecuted accord, which would avail them naught. *Sherman* v. *Sidman,* 300 Mass. at 106. *Zlotnick* v. *McNamara,* 301 Mass. at 227. The judge did not act improperly in confining the rehearing to the record as it appeared at the time of the original hearing and refusing to allow Adelson to file his supplemental affidavit the day of the rehearing. The judge was not obliged to grant a rehearing in the first place: notice of the original hearing had been appropriately sent to the Adelsons' counsel of record. The court and the plaintiff had a right to rely on that notice. See the first sentence of Mass.R.Civ.P. 11(d), 365 Mass. 754 (1974). The matter sought to be raised by the supplemental affidavit (a failure by the plaintiff to sell the pledged securities when the market price was high) would not have helped the defendants in any event. See *Federal Deposit Ins. Corp.* v. *Air Atlantic, Inc.,* 389 Mass. 950, 956-957 (1983).

*Judgment affirmed.*