## GEORGE PAGOUNIS *vs.* LESLIE PENDLETON.

No. 96-P-1439.

Suffolk. January 26, 1999. -- August 10, 2001.

Present: ARMSTRONG, C.J. SMITH, & DREBEN, JJ.

*Contract,* Novation, Lease of real estate. *Practice, Civil,* Standing. *Corporation,* Dissolution, Stockholder. *Negotiable Instruments,* Note, Payment.

In an action on a claim by the plaintiff for payment under two promissory notes, the judge erred in concluding that the plaintiff's claim failed because the actions of the parties worked a novation whereby a corporation was substituted for the individual defendant for purposes of the debt, where, although some evidence may have supported a finding of intent on the part of the plaintiff to enter a novation, on the whole of the evidence it could not be said that there was a "clear and definite indication" that the parties agreed to an extinguishment of their prior contract and to a substitution of a new contract. [273-275]

In an action on a claim by the plaintiff for payment under two promissory notes and a counterclaim by the defendant for the plaintiff's alleged breach of a lease held by a corporation of which the defendant was a principal, the judge correctly found that the defendant personally lacked standing to assert what was in essence a claim belonging to the corporation. [275-277]

CIVIL ACTION commenced in the Superior Court Department on July 26, 1994.

The case was heard by *Maria I. Lopez,* J.

*Raymond Jacoub* for the plaintiff.

*Joseph I. Schindler* for the defendant.

ARMSTRONG, C.J. After a jury-waived trial, the Superior Court entered judgment for the defendant Leslie Pendleton on claims of the plaintiff, George Pagounis, for payment under two promissory notes, and against Pendleton on his counterclaim for Pagounis's alleged breach of a lease held by a corporation of which Pendleton was a principal. Both parties claimed appeals.

The parties do not disagree with the judge's findings of

subsidiary fact. Pendleton and one Kevin Foley[1] were the sole shareholders, officers, and directors of Mission Park Superette, Inc., a Massachusetts corporation doing business as Huntington Markets. The corporation rented business premises in Boston from Pagounis under a lease that allowed it to assign its interest therein with the consent of Pagounis, who was obliged not to withhold such approval unreasonably. In December of 1984, Pendleton executed, jointly and severally with Foley, a promissory note for $15,000 in favor of Pagounis, to be paid by June 7, 1986. In November of 1985, Pendleton and Foley executed a second note payable to Pagounis, this time for $50,000 and due by December 1, 1987. Pendleton and Foley failed to make payment to Pagounis on the two notes.

In April, 1988, with business deteriorating, Pendleton and Foley decided to sell their interests in the corporation and assign the corporate lease to Genaro DiCenzo, for a sum equaling the corporation's debts at the time. The deal fell through when Pagounis refused to consent to the lease assignment unless he was paid $10,000 above the amounts still owed by Pendleton and Foley under the promissory notes. On May 2, 1988, the corporation filed a voluntary petition for relief under Chapter 11 of the Federal Bankruptcy Code. In papers filed in that proceeding, the corporation identified Pagounis as an unsecured creditor to whom it owed $65,000. In turn, Pagounis filed a proof of claim in the amount of $65,000 against the corporation's bankruptcy estate. No direct evidence appears as to whether Pendleton and Foley used the $65,000 for corporate or personal purposes; we assume, however, from the fact that Pagounis was accepted as a corporate creditor in the bankruptcy proceeding, that the Pendleton-Foley notes were intended as security for the corporation's debt to Pagounis.

On October 6, 1989, at a closing as part of the bankruptcy proceedings, the corporation again attempted to sell its assets, including its leasehold interest, to DiCenzo for the same price negotiated the prior year. Pagounis refused to consent to the lease assignment to DiCenzo unless Pendleton and Foley signed a document stating: "We, Leslie Pendleton, Jr. and Kevin Foley acknowledge that the total amount due to George Pagounis as

---

[1]Kevin Foley was defaulted below and is not a party to this appeal.

of this date is seventy thousand dollars (70,000). Said sum is due and payable on or about April 6, 1990." The $70,000 figure was the sum of the $65,000 owed under the promissory notes and $5,000 that Pagounis sought in exchange for his consent to the assignment. Having been advised by Richard McKenzie, the corporation's counsel in the bankruptcy proceedings, that signing the document was vital to the sale, Pendleton signed the so-called "acknowledgment."

Thereafter, the corporation consummated the sale and assignment to DiCenzo. In conjunction with the sale and pursuant to the corporation's plan for reorganization, Pagounis accepted as partial satisfaction of his claim against the corporation, in lieu of a cash distribution, a promissory note payable by DiCenzo in the amount of $25,000. Pagounis also agreed to take a pro rata share, along with other unsecured corporate creditors, of any future distributions from the bankruptcy estate.[2] There is no evidence of further distributions, and there was unrefuted testimony that the corporate debts exceeded the sale price, such that the claims of the unsecured creditors stood not to be fully met.[3]

An action by Pagounis against Pendleton on the Pendleton-Foley notes resulted in a judgment in the Boston Municipal Court for Pagounis on the notes, but the action was retried in the Superior Court by way of retransfer under G. L. c. 231, § 102C. At issue were Pagounis's claim for the unpaid amount under the notes[4] and Pendleton's counterclaim against Pagounis for unreasonably withholding his consent to the lease assignment in 1988, which allegedly deprived the corporation of a

[2]The corporation had listed as one of its assets a possible claim for damages against the State Department of Public Works.

[3]Pendleton offered evidence that between the thwarted 1988 sale to Di-Cenzo at a price then equaling the corporate debt and the completed 1989 bankruptcy sale to DiCenzo for the same price, the corporation's debts increased significantly, such that the contemplated bankruptcy distribution to unsecured creditors was about one-third of the amounts owed. Pagounis accepted the DiCenzo note as his share of the distribution.

[4]Pagounis does not contend that the 1989 "acknowledgement" is enforceable as a promissory note, nor does he pursue the $5,000 sought in exchange for his consent to the lease assignment to DiCenzo. His counsel stated at argument that Pagounis seeks merely the unpaid balance under the original notes, which, accounting for the $25,000 note from DiCenzo, totals $40,000.

chance to avoid bankruptcy. The judge concluded that Pagounis's claims failed because the actions of the parties worked a novation whereby the corporation was substituted for Pendleton for purposes of the debt. As to the counterclaim, the judge found that Pendleton personally lacked standing to assert what was in essence a claim belonging to the corporation.

1. *Novation.* Without the agreement of the parties to an extinguishment of the prior contract and to a substitution of the new contract, there can be no novation. See *Larson* v. *Jeffrey-Nichols Motor Co.,* 279 Mass. 362, 366 (1932). Although "a substituted contract or novation may be inferred despite a lack of express language to that effect," *Lipson* v. *Adelson,* 17 Mass. App. Ct. 90, 94 (1983), and may be based solely on the circumstances and conduct of the parties, *Clark* v. *General Cleaning Co.,* 345 Mass. 62, 64 (1962), a finding of an intent to discharge the preexisting indebtedness should rest on a "clear and definite indication" of such intent. *Lipson* v. *Adelson, supra* at 92-93, citing 58 Am. Jur. 2d Novation § 20, at 534 (1971). Whether the parties intended a novation was a factual question, see *Fauci* v. *Denehy,* 332 Mass. 691, 697 (1955), and cases cited, as to which Pendleton, asserting it as an affirmative defense, bore the burden of proof. *Clark* v. *General Cleaning Co., supra* at 64.

Reviewing the judge's finding under the "clearly erroneous" standard, see Mass.R.Civ.P. 52(a), as amended, 423 Mass. 1402 (1996); *Kendall* v. *Selvaggio,* 413 Mass. 619, 620-621 (1992), we conclude that the judge's finding that Pagounis intended to discharge Pendleton from personal liability on the promissory notes cannot stand. The judge based her finding of novation on Pagounis's having filed a proof of claim against the corporation's bankruptcy estate, his acceptance of $25,000 from the estate in partial satisfaction of Pendleton's obligation, and his agreement to share future distributions pro rata with other unsecured creditors. Those facts, even viewed in isolation, suggest no reason why Pagounis would want to relinquish his collateral security for the debt.[5]

Significantly here, none of the three witnesses at trial (Pagou-

---

[5]Our reasoning here does not depend on our assumption that the $65,000 was a legitimate debt of the corporation. Even if Pendleton and Foley were

nis, Pendleton, and McKenzie) affirmatively testified to the existence of any agreement, oral or written, that Pagounis would look to the corporation rather than Pendleton and Foley for payment of the full debt. The only witness to speak on the issue was Pagounis, and his unrefuted testimony was that he at no time released Pendleton from personal responsibility to honor the notes.

In considering the parties' intent to enter a novation, the trial judge disregarded what was possibly the most probative evidence, the "acknowledgment." The judge's reason for discounting the acknowledgment is perhaps reflected in her observation that the document failed to identify precisely who it was that owed the $70,000 to Pagounis. Picking up on this thread, Pendleton argues in essence that the acknowledgment has no significance because it could be read as indicating that the corporation now owed the money to Pagounis. Clumsy drafting aside, several factors make it more likely that the acknowledgment expressed Pagounis's intent that Pendleton and Foley personally continue to owe the sum in question. First, the body of the document stated that "[w]e, Leslie Pendleton, Jr. and Kevin Foley acknowledge" that the debt was owing to Pagounis, and there was a separate signature block for each person with no mention anywhere of the corporation. Moreover, for Pagounis to insist on the full $70,000 from the corporation as sole debtor would have been flatly inconsistent with his agreement to accept whatever pro rata share might come to him from future bankruptcy distributions, especially in light of the uncontradicted testimony that the corporation's debts were in excess of the sale value of its business assets to DiCenzo.

Although some evidence may have supported a finding of intent on the part of Pagounis to enter a novation, on the whole of the evidence it could not be said that there was a "clear and

---

solely liable on the debt, "payment on a debt by a third party which is accepted by a creditor does not establish a novation." *Macklin* v. *Brown,* 111 Mich. App. 110, 113 (1981). See *Union Mut. Life Ins. Co.,* v. *Chrysler Corp.,* 793 F.2d 1, 13-14 (1st Cir. 1986) (creditor's acceptance of monthly payments from third party did not release original debtor from its contractual obligation to pay debt). "There is no novation until the creditor accepts the new debtor in full substitution for the former one and thus completely releases the old debt." *Tudor Press, Inc.* v. *University Distrib. Co.,* 292 Mass. 339, 341 (1935).

definite indication" to that effect, *Lipson* v. *Adelson*, 17 Mass. App. Ct. at 92. We are "left with the definite and firm conviction that a mistake has been committed." *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 792 (1986), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

2. *Standing.* The judge properly ruled that Pendleton lacked standing personally to assert the counterclaim against Pagounis. Although there was no evidence of formal corporate dissolution, the judge implicitly found that the corporation survived at least through the October, 1989, sale of its business assets. Even assuming the corporation was then terminated for other purposes, when Pendleton brought his claim less than three years later, under the corporate continuation statutes the corporation still existed for purposes of prosecuting claims. See G. L. c. 156B, § 102, & G. L. c. 155, § 51. The claim here was one belonging to the corporation, as it was the named tenant on the lease, and the claim asserted a violation of the lease contract resulting in damage to the corporation. Any harm suffered by Pendleton was indirect in that it affected him merely as an owner of corporate stock, and the only remedy that might be available (other than a direct action by the corporation) was a stockholder's derivative suit. See *Converse* v. *United Shoe Mach. Co.*, 185 Mass. 422, 423 (1904); *Shaw* v. *Harding*, 306 Mass. 441, 448 (1940); *Bessette* v. *Bessette*, 385 Mass. 806, 809-810 (1982); *Jackson* v. *Stuhlfire*, 28 Mass. App. Ct. 924, 925 (1990).

Pendleton has not argued that he intended to or properly did bring suit derivatively.[6] Rather, his argument is that on the termination of the corporation at the 1989 closing, he as a stockholder succeeded to the remaining property of the corporation, including its claims, and could therefore personally bring a

---

[6]The materials before us do not show that the prerequisites for such an action were met, such as joinder of the corporation as a party defendant, verification of the complaint by oath, adequacy of representation, and a shareholder's demand (unless excused) for action by the directors and stockholders. See Mass.R.Civ.P. 23.1, 365 Mass. 768 (1974). See generally Smith & Zobel, Rules Practice §§ 23.1.1-23.1.6 (1975); Southgate & Glazer, Massachusetts Corporation Law & Practice §§ 15.4-15.5 (1991 & Supp. 1992, 1999).

direct action.[7] Here, he relies on *Cummington Realty Assocs.* v. *Whitten*, 239 Mass. 313, 325 (1921), which applies the equitable doctrine that upon the dissolution of a corporation, all debts having been paid and no receiver having been appointed, the property of a dissolved corporation passes to its former shareholders. Should we assume that the claim against Pagounis is a property interest governed by the equitable rule, Pendleton cites no authority for applying that rule during the three-year statutory winding up period. To the contrary, the authorities demonstrate that the doctrine is inapplicable during that time. In *Cummington Realty* itself, the court took pains to note that the continuation statute did not apply because more than three years had elapsed since dissolution, an observation that would not have been necessary unless the statute suspended the equitable rule. See *ibid.* (citing what is now G. L. c. 155, §§ 51-52). See also *Springfield* v. *Schaffer*, 12 Mass. App. Ct. 277, 279 (1981) ("Because more than three years had elapsed from the date of dissolution of [the corporation], the respondent became the owner of all that corporation's real property by reason of being the corporation's sole shareholder upon dissolution"); *Halliwell Assocs., Inc.* v. *C. E. Maguire Servs., Inc.*, 586 A.2d 530, 535 n.2 (R.I. 1991) (construing Massachusetts equitable rule as taking effect "upon the expiration of the windup period"); Fletcher, Cyclopedia of the Law of Private Corporations § 8130, at 396 (1988) ("[I]t is the general rule in the absence of statutory continuation of the corporate existence, that upon dissolution or forfeiture of a corporation's charter the property of the dissolved or defunct corporation passes to the stockholders, subject to outstanding claims of the corporation's creditors") & § 8134, at 411 (noting function of equitable rule as allowing distribution of corporate assets to shareholders "when no other mode of distribution is provided by statute"). A contrary conclusion would frustrate the aim of the continuation statute — to

---

[7]Pendleton does not assert, nor is there evidence, that the corporation distributed or assigned a claim against Pagounis to its shareholders during the three-year windup period. See G. L. c. 155, § 51A; G. L. c. 156B, § 103; *Boston Tow Boat Co.* v. *Medford Natl. Bank*, 228 Mass. 484, 486-487 (1917). (Indeed, no claim against Pagounis was listed as an asset of the corporation in the bankruptcy proceeding.)

"provide for the orderly liquidation of [corporate] affairs," *Zottu* v. *Electronic Heating Corp.*, 334 Mass. 442, 445 (1956) — because both the corporation and its shareholders could theoretically assert corporate claims and because of the party joinder issues that would arise, particularly where there are multiple shareholders each having, under Pendleton's theory, an interest in the litigation. The judge correctly ordered dismissal of Pendleton's counterclaim.

3. *Conclusion.* So much of the judgment as dismisses Pagounis's claims against Pendleton on the notes is vacated, and the case is remanded for a determination of the amount due him on those claims. The judgment is otherwise affirmed.

*So ordered.*