Cornetta, Robert A., J.
This matter came on for hearing before the Court April 11, 2005 upon four motions by the parties; viz: Cross Motions for Summary Judgment by the plaintiff Templeton Board of Sewer Commissioners (herein ‘Templeton” or the “the Town”) and the defendant Erving Industries, Inc. (herein “Erving”), Erving’s and Baldwinville Products, Inc.’s (herein “Baldwinville”) Motion for Partial Summary Judgment and defendant Nourollah Elghanayan’s (herein “Elghanayan”) Motion for Summary Judgment upon cross claims of Erving and Baldwinville and Motion to Bifurcate the same.
After considering the arguments of the parties and reviewing the briefs and documents contained therein, this court makes the following findings of fact, rulings of law, and order for judgment. For the reasons stated below, Erving’s Motion for Summary Judgment regarding its liability is ALLOWED, and Templeton’s Opposition is DENIED, Templeton’s Motion for Summary Judgment concerning Baldwinville’s purported assignment is ALLOWED, Erving’s and Baldwinville’s Motion for Partial Summary Judgment regarding the effective date of the contractual term is ALLOWED, and the Court reserves ruling upon Elghanayan’s Motion for Summary Judgment pending the next appearance of the parties.

BACKGROUND

In the 1970s, Baldwinville operated a paper mill in the Town of Templeton. Paper mills produce inordinate amounts of liquid waste, or sewerage, which historically would be discharged without treatment. This untreated discharged waste would have a significant environmental impact upon waterways and their environs. In the 1970s, local, state and federal governments, as part of public policy, mandated this effluent be treated in an environmentally responsible manner. Specifically, in 1972, Congress enacted the Federal Water Pollution Control Act, or the Clean Water Act, to “restore and maintain the chemical, physical, and biological integrity of the Nation’s waters.” As a result of the Clean Water Act, manufacturers like Baldwin-ville were required to treat the wastewater generated by the paper mill. In 1972, neither Baldwinville nor Templeton had a wastewater treatment facility that would comply with the Clean Water Act.
On March 4, 1974, the plaintiffs predecessor in interest, the Board of Selectman of the Town of Tem-pleton, entered into a wastewater treatment contract (herein the “Contract”) with Baldwinville.[2]
Due to the significant cost of compliance with this mandated wastewater treatment policy and its potential economic impact upon Baldwinville, as it was required to meet these newly enacted government regulations, the parties entered into the Contract. Such an agreement would permit Baldwinville to maintain operations because the Town would accept the wastewater from the paper mill. The Contract also benefitted the Town, who retained legal title of the plant, by providing corporate profit, tax revenue and employment to the region. Further, it would allow the Town of Templeton to dispose of its communiiy-gen-erated sewerage in one combined plant, without imposing costs upon the Town for waste treatment. As a charge for treatment of its wastewater, Baldwinville would pay the net operating costs and 95.5% of the net capital costs of the plant. The Town would pay Baldwinville the sum of one dollar ($1.00) to operate the plant to the satisfaction of state and federal regulator agencies under the supervision of the Town.
According to the facts presented at the hearing on April 11, 2005, the plant was sized nine (9) times greater than the Town’s needs. This differential indicates the plant was to also provide for the significant needs of Baldwinville’s paper-making operations in addition to the Town’s waste treatment. In accordance with the terms, the length of the Contract was to be for thirty (30) years and the Town was to use its municipal borrowing authority for construction and acquisition purposes. Baldwinville was bound to pay all net operating costs for the plant, including those associated with treatment of the Town’s generated waste.
Also within the terms of the Contract, at the conclusion of the thirty-year period, Baldwinville would have the right to either extend the Contract for an additional ten (10)-year period or the Contract would automatically terminate and the Town would then own the plant and Baldwinville would no longer have the right to treat its effluent.
There are numerous other provisions contained within the lengthy Contract. However, the above-referenced provisions include the salient points regarding the parties’ relationship with and obligations to each other, and those which form the basis of the issues involved in this litigation.
The best intended plans are often unable to predict the future, and, in this case, that maxim holds true. From its execution forward until 1990, the parties performed their obligations pursuant to the terms of the Contract without any major disputes which might have endangered the Contract’s viability.
From 1979 to 1991, Baldwinville, through Erving Service Company, Inc. (“Erseco”), Erving’s subsidiary, operated the plant. However, on August 28, 1990, Baldwinville and its parent company, Erving, entered into a purchase and sale agreement with American Tissue Mills of America (herein “American Tissue”) and its associated business, whereby it transferred Baldwinville’s assets to American Tissue. On March 4, 1991, Baldwinville purportedly assigned its wastewa-ter treatment responsibilities created by the Contract to Northeast Waste Treatment Services, Inc. (herein “Northeast”), a subsidiary company of American Tis *324 sue. The Town was neither a party to the assignment nor did it ever authorize such an assignment of interest. It is to be noted that, according to the terms of the Contract, Baldwinville’s obligation to pay net operating costs of the plant is “unconditional.” From March 4, 1991 Northeast operated the plant until it abruptly ceased operation of the wastewater plant in April 2003.
Since that time, the Town has incurred certain costs associated with keeping at least so much of the plant operating in order to dispose of its community-generated effluent in addition to other ancillary expenses. Moreover, another series of events have since transpired.
American Tissue is currently in bankruptcy and Northeast and Gabayzadeh have both defaulted in this action. The Town has dismissed its claims against Elghanayan, leaving Elghanayan’s cross claims against Erving and Baldwinville to be adjudicated. At this point, Baldwinville can aptly be described as a mere “shell” entity of its parent corporation, Erving, which remains operational.
Elghanayan now seeks to defend against attempts to be held personally liable for the financial liabilities of American Tissue, in its various capacities, and Northeast.
Finally, the Town is currently seeking to reconstruct or modify the plant to make it an efficient and cost-effective operation in compliance with environmental laws and regulations.
As a backdrop to these event, during the hearing on April 11, 2005, it has been disclosed in open Court that there is an estimated six million dollars ($6,000,000.00) in third-party “night soil” deposit fees, which now must be accounted for, that the Town has collected throughout the years from the plant’s operations over and above net operating expenses. The parties’ Contract appears to be silent on this point.

DISCUSSION

The litigation in this matter has been both protracted and complicated. The parties now seek rulings from this Court on four (4) outstanding motions: (1) Erving’s Motion for Summaiy Judgment as to the plaintiffs complaint and Templeton’s Cross Motion for Summaiy Judgment on the same; (2) Templeton’s Motion for Summaiy Judgment regarding the purported assignment; (3) Erving’s and Baldwinville’s Motion for Partial Summary Judgment as to Templeton’s claim for breach of contract; and (4) Elghanayan’s Motion for Summaiy Judgment for Erying’s and Baldwinville’s Cross-Claims against him and Motion for Bifurcation of the Cross-Claims between himself, Erving and Baldwinville.
Summaiy judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c) (“[Summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and responses to requests for admission under Rule 36, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law”), Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
I. Erving was not an original party to the Contract and bears no obligations to the Town for performance under the Contract.
Erving moved for Summary Judgment as to the Town’s cause of action contesting its participation in, and liability under, the 1974 Contract. Erving argues that there is no genuine issue of fact that it was not a party to the Contract and thus it is entitled to judgment as a matter of law.
Erving claims that it is not a party to the Contract because it never signed it. Erving contends that Baldwinville was the party that contracted with the Town and points to Erving’s lack of signature and acknowledgment of the parties’ agreement, and even the lack of a place for Erving to sign the contract as evidence of its lack of participation. Erving further relies on the uncontroverted affidavit of Charles B. Houson, dated July 28, 1997 and the testimony of the Town’s Mass.R.Civ.P. 30(b) designee, Kent Songer, to support its contention and to demonstrate the Town’s lack of credible evidentiary support for its claim that would create a triable issue. Erving, a party sought to be charged in this action, has not signed the Contract, and the documents even lacked a place for it to sign.
The Town next asserts that, because Baldwinville and Erving, were under common control and failed to observe the formal barriers between the companies, they were not in fact separate entities and are both bound to the Contract. See My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 620 (1968). While the Contract in its preamble refers to the contracting parties as the Town of Templeton and “Baldwinville Products, Inc. and Erving Paper Mills as owner of Baldwinville Products, Inc.,” at all times germane to this action, Erving, has maintained itself as a separate and adequately capitalized company distinct from Baldwinville. Additionally, Baldwinville has also maintained a separate corporate identity *325 distinct from Erving and the two companies were never treated as one entity. As a result of their separate corporate identities, the signature of Baldwinville cannot be used to bind a separate legal entity (Erving), to the Contract.
Finally, the Town argues, despite the absence of Erving’s signature, the conduct of parties after the Contract’s execution indicate it was an intended party. See Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 411 Mass 39, 59 (1991). Parole evidence is a source for interpretation only when contract terms are ambiguous. Kobayashi v. Orion Ventures, Inc., 42 Mass.App.Ct. 492,496 (1992). Although it is clearthat Erving did not sign the Contract, the reference to “Baldwinville Products, Inc. and Erving Paper Mills as owner of Baldwinville Products” as a contracting party creates uncertainty as to the identity of the parties to be bound by the Contract. Consequently, it is appropriate for the court to refer to parole evidence to determine the parties’ intent. See USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass.App.Ct. 108, 116 (1989) (“Extrinsic evidence bearing upon the background and purpose of the parties . . . may be considered both in the construction of ambiguous contract language and in resolving uncertainties in applying the terms of the written contract to the subject matter”).
The Town submits as proof of intent a handful of correspondence sent by Erving, on Erving stationary, regarding the payment of capital costs associated with the Contract, and of the Town’s concern about the proposed sale of Baldwinville’s paper mill. The Town also submits an invoice and a few pieces of correspondence sent by the Town to Erving regarding costs under the Contract as proof that the Town consistently treated Erving and Baldwinville as interchangeable entities.
These few documents, sent rarely between the years 1974 and 1990, demonstrates nothing more than that Erving was the parent company to the subsidiary Baldwinville, which does not equate to being treated as only one entity. These sparse documents do not raise a triable issue that Erving was intended as a third parly to the Contract. Therefore, it is undisputable that Erving, as a corporate entity distinct from Baldwinville, was not a party to the contract and thus bears no obligations to the Town. Accordingly, Erving is entitled to judgment as a matter of law for all of the Town’s legal actions against it.
II. Baldwinville is liable under the Contract because it did not effectually assign its interests and obligations created under the Contract to Northeast.
The Town moved for judgment as a matter of law regarding Baldwinville’s liability and challenging the effectiveness of Baldwinville’s alleged assignment of interest under the Contract. In its Opposition to the plaintiffs Motion for Partial Summary Judgment, Baldwinville also contends that the purported March 4, 1991 assignment of interest relieved it from any further obligations to the Town created under the Contract. The evidence establishes two facts regarding Baldwinville’s contractual liability to the Town. First, its obligation was “unconditional” per the express language contained within the terms of the Contract. Contract, §XVI.B. 1(g). Secondly, while the assignment and assumption agreement dated March 4, 1991 assigns Baldwinville’s interest in the wastewater treatment contract to Northeast, it is silent as to assigning responsibility to Northeast. Nevertheless, regardless of the language of the assignment, Baldwinville lacked the power to assign its obligations to the Town under the Contract without the Town’s consent because it is clear that its duty was unconditional. See Freelander v. G.&K. Realty Corp., 357 Mass. 512, 525-26 (1970) (where the language of a contract is not ambiguous, the words will be given their plain meaning). As evidenced by the document itself, the Town was not a party to the assignment and therefore did not consent to this transfer of obligations. See Pagounis v. Pendleton, 52 Mass.App.Ct. 270, 273 (2001) (without the agreement of the parties to an extinguishment of the prior contract and to a substitution of the new contract, there can be no novation). Although a “substituted contract or novation may be inferred despite a lack of express language to that effect,” and may be based solely on the conduct of the parties, a finding of an intent to discharge the preexisting obligation should only rest on a “clear and definite indication” of such intent. Pagounis, 52 Mass.App.Ct. at 273; Upson v. Adelson, 17 Mass.App.Ct. 90, 94 (1983).
Baldwinville asserts that a few items of correspondence between the Town and Northeast referring to the wastewater treatment contract as being a contract with American Tissue or Northeast and changing the name to ATM on the NPDES permit constituted a novation. However, this evidence does not come close to the “clear and definite indication” of consent that is required to infer intent of discharge. Consequently, Baldwinville has failed to present evidence that would create a triable issue as to whether it could demonstrate a “clear and definite indication” of the Town’s intent to discharge Baldwinville from its contractual obligations. See Lipson, 17 Mass.App.Ct. at 94. Accordingly, the Town is entitled to judgment as a matter of law as to Baldwinville’s liability for its obligations under the Contract.
III. The effective date of the term of thirty years for the Contract commenced on the date of the execution of the Contract.
Baldwinville[3] seeks partial summary judgment regarding the Town’s claims based upon the issue of the “effective date” of the contract for purposes of establishing the term for which Baldwinville would be liable for the net operating costs of the plant. Baldwinville contends that the “effective date” is the date of execution of the Contract, March 4, 1974. The Town count *326 ers that the term of thirty years did not commence until the plant began operations in 1978.
The Town’s Mass.R.Civ.P. 30(b) designee, Songer, was unable to produce any evidence to support the contention that the term commenced, for purposes of net operating costs, in 1978.
The Town suggests that comparing Sections XIII and XXIX of the Contract establishes a triable issue on that point. The Town’s argument is misplaced. The language in contracts is to be given its plain meaning in the absent ambiguity or sufficient evidence demonstrating the parties’ intentions to the contrary. See Freeloader, 357 Mass, at 525-26. Massachusetts Mun. Wholesale Elec. Co. v. City of Springfield, 49 Mass.App.Ct. 108, 111 (2000) (“In interpreting a contract, the court must construe all words that are plain and free from ambiguity according to their usual and ordinary meaning”). Here, Section XXIX of the Contract specifically refers to its “effective date” in common language, i.e. the date the agreement was executed. There is nothing in this Section to suggest the parties intended any other date to be the “effective date” and the Town cannot point to any evidence to counter Baldwinville’s assertion.
Section XII addresses the period of time during which the Town was obligated to accept effluent from Baldwinville and fixes Baldwinville’s extension options regarding utilization of the plant. Again, applying the plain meaning doctrine, and in absence of evidence to the contrary, the effective date of the Contract for purposes of Baldwinville’s duty to pay the net operating costs commenced with the Contract’s execution on March 4, 1974. Accordingly, the contractual period terminated thirty years thereafter, and Baldwinville’s obligations to the Town ceased on March 4, 2004. Due to the lack of evidence creating a triable issue, judgment as a matter of law regarding the effective date of the contractual term is granted in favor of Baldwin-ville.
IV. The Court reserves ruling upon Elghanayan’s Motion for Summary Judgment until the parties’ next appearance before the Court.
On February 28, 2005, the Town stipulated to a dismissal with prejudice of its claims against the defendant Elghanayan. Erving and Baldwinville have stipulated to the bifurcation of the parties’ cross claims for trial. Consequently, there only remains Elghanayan’s Motion for Summary Judgment for his cross claims against Erving and Baldwinville.
At the April 11, 2005 hearing, the Court reserved ruling upon the same, pending the parties’ next appearance before the Court. Elghanayan requested the scheduling of that appearance to be in a timely fashion.
Accordingly, in the interests of expedient scheduling and conducting a timely final pretrial hearing in preparation for assigning this matter a trial date, all parties shall again appear before the Court on Wednesday, June 15, 2005 at 9:00 a.m.

ORDER

For the foregoing reasons, Erving’s Motion for Summary Judgment regarding Erving’s liability is ALLOWED and Templeton’s Cross-Motion for Summary Judgment is DENIED; Templeton’s Motion for Partial Summary Judgment regarding the alleged assignment of interest is ALLOWED; Erving and Baldwinville’s Motion for Partial Summary Judgment concerning the date of the contract period is ALLOWED, and the Court reserves ruling on Elghanayan’s Motion for Summary Judgment until the parties’ next appearance before the Court. It is now ordered that the foregoing findings and rulings be entered upon the docket in this matter and that notice be provided to the parties by the Clerk Magistrate.

According to the plaintiffs complaint, the parties to the Contract included the Templeton Board of Sewer Commissioners’ predecessor in interest, the Board of Selectman of the town of Templeton, Erving, and Baldwinville, a subsidiary of Erving.

Although Erving was also named as a party in the motion, since it has already been determined that Erving was not a party to the Contract, the court need only to address Baldwinville’s liability