NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1084

CITY OF MARLBOROUGH

vs.

JOSEPH F. DRISCOLL & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The appellants, Joseph and Judith Driscoll,[2] appeal from two

final judgments[3] entered by a judge of the Land Court who ruled

that all rights of redemption as to three parcels of land,

denominated Parcels C, D, and E in the Middlesex Registry of

Deeds, Plan Number 1348 of 1951, were forever foreclosed and

---

[1] Judith A. Driscoll.  The other defendants involved at earlier stages in this litigation are no longer parties and are not relevant to this appeal.

[2] Because many of the parties share a surname, we will refer to them by their first names, or collectively by their last names, to avoid confusion.  Joseph is Judith's husband.

[3] The appeals were consolidated for briefing and argument in this court.

barred.  Joseph also appeals from the denial of his motion to enlarge time to redeem.

The Driscolls' house is located on Parcels C and E.  The Driscolls argue that the city of Marlborough's taking and retention of the entirety of all three parcels, rather than compensating them for the value above that amount should it choose to use the property for a public purpose, or selling the property and retaining only that amount and returning the overage to those from whom it was taken, violates the takings clause of the Fifth Amendment to the United States Constitution.

During the pendency of this appeal, the United States Supreme Court issued its ruling in Tyler v. Hennepin County, 598 U.S. 631 (2023).  Tyler held that under the just compensation clause of the Fifth Amendment, when property is taken by a governmental entity to settle a tax debt, if it is sold, the amount above the tax debt must be returned to the taxpayer, or if it is retained to be used for a public purpose, the taxpayer must be compensated for the value above the tax debt.  Id. at 639.  Prior to that decision, this was the rule in thirty-six States and the District of Columbia.  Id. at 642.  As a matter of the constitutional right of the taxpayer, it is now the rule throughout the United States, including here in the Commonwealth.

We conclude that at least Joseph has standing to contest the taking with respect to Parcels C and D, and that the order foreclosing his right of redemption must be vacated pursuant to Tyler, 598 U.S. at 639. We further conclude that determining whether either Judith or Joseph has standing to contest the tax taking of Parcel E turns on factual questions that have not yet been resolved, and that the judgment with respect to that parcel, too, must be vacated. The case is remanded for further proceedings as described below.

Background. This case involves three parcels of land in the city of Marlborough (City), denominated Parcels C, D, and E in the Middlesex Registry of Deeds, Plan Number 1348 of 1951. A house was constructed on Parcel C in 1974, and Judith and her children have lived there since 1976. The driveway to the house is on Parcel E, and, in 1984, an addition to the house, which included an in-law apartment, was built on Parcel E. After that, Judith's parents, Dorothy and Andrew Santella,[4] moved into the in-law apartment, where they lived until 2010. In 1989, Joseph moved into the house as well.

In 2009, the City sought to foreclose a tax lien on the three parcels. The land was taken by the City due to the

---

[4] Both of the Santellas are now deceased. One of Judith's sisters, Anne Marie Haynes, was appointed as the personal representative of Dorothy's estate.

alleged nonpayment of 2003 taxes with respect to Parcel E, and 2008 taxes with respect to Parcels C and D. Parcels C and D were taken in December 2008. The instruments of taking alleged unpaid taxes, interest, and incidental expenses and costs totaling $6,193.26 for Parcel C and $232.90 for Parcel D. Parcel E was taken in December 2004. The instrument of taking alleged unpaid taxes, interest, and incidental expenses and costs totaling $65.98 for Parcel E. Although initially the 2009 suit sought to foreclose the tax liens on all three parcels, after the City concluded that Parcel E had different ownership than Parcels C and D, the City amended its complaint to remove Parcel E from the 2009 litigation, and commenced another action in 2011 regarding only Parcel E.

Several of the defendants in the 2009 and 2011 litigation, including Andrew, Dorothy, Joseph, and Judith, then became involved in separate litigation, not involving the City, in the Probate and Family Court and in the Superior Court, regarding the ownership of the parcels at issue. In 2014, a judge of the Probate and Family Court held that Parcels C and D were owned jointly by Andrew, Dorothy, and Joseph, and voided a 1996 deed purporting to transfer the property to Judith and others. In another action in 2017, a judge of the Superior Court dismissed Judith's claim of title to the property under the resulting trust doctrine, holding that her claim was precluded. In 2010,

4

Andrew and Dorothy brought a partition action in the Probate and Family Court against Joseph regarding Parcels C and D, and, at least at the time of argument in this case, that action was still ongoing.

In 2020, the City moved to strike Judith's appearances and answers in both the 2009 and 2011 actions, claiming that she had no standing to assert a right to redeem any of the three parcels. A first judge of the Land Court allowed the City's motion on January 21, 2021, holding that Judith possessed "no cognizable interest in the properties at issue in these cases that would allow her to appear and be heard on the question of their redemption." Judith filed a motion for reconsideration, which the judge denied on June 7, 2021.

In the January 21, 2021 order, the first judge also held that Joseph possessed some ownership interest in Parcels C and D, and therefore could assert his right to redeem those parcels in the 2009 litigation. On June 13, 2022, a second judge of the Land Court found that Joseph could exercise his right of redemption by paying the City $228,725.98, plus interest, legal fees, and costs, by August 26, 2022. Joseph moved for reconsideration of this finding and asked that the redemption payment date be continued until final resolution of the partition action pending in the Probate and Family Court. The second Land Court judge denied Joseph's motion on August 12,

5

2022.  Joseph then moved to enlarge the time to redeem by ninety days, but that motion was denied as well.  Joseph did not exercise his right of redemption and, on September 26, 2022, upon the City's motion, the second Land Court judge entered final judgment, stating that "all rights of redemption are forever foreclosed and barred" as to Parcels C and D.

In the 2011 litigation, the City moved on April 13, 2022, to strike Joseph's and other defendants' appearances and answers.  The second Land Court judge allowed the motion on June 13, 2022.  Joseph filed a motion for reconsideration, which was denied.  On September 2, 2022, upon the City's motion, the second judge entered final judgment as to Parcel E.

Both Joseph and Judith appealed both final judgments.  We have those appeals before us now.

Discussion.  1.  Standing.  a.  Parcels C and D.  i. Judith.  The Driscolls argue that Judith has an ownership interest in Parcels C and D, pursuant to both a 1996 deed (second 1996 deed) and a 1977 deed (April 1977 deed).  We disagree.

The first judge of the Land Court correctly held that Judith is precluded from arguing that she holds title to Parcels C and D.  On March 28, 2011, the Santellas filed a complaint in the Probate and Family Court against Judith and others, alleging that by way of the second 1996 deed, Judith fraudulently

6

conveyed title to the property to herself and others as trustees of a realty trust. In 2014, a judge of the Probate and Family Court ruled in that case that Dorothy and Andrew, title owners of Parcels C and D under the April 1977 deed, validly conveyed the parcels to themselves and Joseph in a first 1996 deed. The judge of the Probate and Family Court then held that the second 1996 deed, which purported to convey the Santellas' and Joseph's interests to Judith and others in the form of a trust, was procured by misrepresentation or was fraudulently altered, and thus voided that deed. A different panel of this court affirmed that decision in an unpublished memorandum and order. To the extent Judith relies on the second 1996 deed, because she actually litigated the validity of the deed and lost, there was a final judgment on the issue, and that determination was essential to the judgment, the doctrine of issue preclusion prevents her from raising the same issue again now. See Jarosz v. Palmer, 436 Mass. 526, 530-531 (2002).

Judith again litigated the ownership of Parcels C and D in 2017, when she filed a complaint in the Superior Court to establish a resulting trust against the Santellas. She relied upon the April 1977 deed. The Superior Court judge dismissed the case based on claim preclusion. Another panel of this court affirmed in an unpublished memorandum and order, holding that in the 2014 Probate and Family Court case Judith could have raised

7

not only the issue of the second 1996 deed, but also her claim of ownership under the April 1977 deed, or any other claim of ownership. To the extent Judith claims title to the property under the April 1977 deed, the issue is thus also barred by the doctrine of issue preclusion.

We thus conclude that Judith is precluded from arguing on the basis of the April 1977 deed, and the second 1996 deed, an ownership interest in Parcels C and D. We therefore affirm the judgment to the extent it concluded she has no standing to assert a right to redeem those two parcels.

ii. Joseph. As discussed above, a judge of the Probate and Family Court held in 2014 that Joseph has at least a partial ownership interest in Parcels C and D pursuant to the first 1996 deed. The first Land Court judge noted this and concluded that Joseph has standing to assert a right to redeem those two parcels. We agree.

b. Parcel E. With regard to Parcel E, the Driscolls argue that it was conveyed to Judith pursuant to another 1977 deed (June 1977 deed) from Albert Sebastian and Robert Ricci, and that she then conveyed the parcel to Andrew in 1991, who later conveyed it to Andrew, Dorothy, and Joseph in the same first 1996 deed by which Andrew and Dorothy conveyed to them Parcels C and D.

8

The first Land Court judge held in a June 7, 2021 order that Sebastian and Ricci could not have conveyed Parcel E to Judith in June 1977, as the parcel was held by Truetta Corporation (Truetta) at the time. The judge rejected Judith's argument that Truetta had conveyed Parcel E to Sebastian and Ricci in 1964, instead holding that the 1964 deed to which she referred conveyed entirely different parcels.

However, the judge did not address the Driscolls' argument that even if the 1964 deed did not convey Parcel E from Truetta to Sebastian and Ricci, when Truetta was dissolved, the property passed back to Truetta's owners, who were Sebastian and Ricci. "[U]pon the dissolution of a corporation, all debts having been paid and no receiver having been appointed, the property of a dissolved corporation passes to its former shareholders." Pagounis v. Pendleton, 52 Mass. App. Ct. 270, 276 (2001).

A document in the record appears to indicate that Truetta dissolved in 1958, although there has been no finding of fact on that issue. If that is true, the Driscolls' argument may have merit. The equitable doctrine described in Pagounis begins after a three-year winding up period. Pagounis, 52 Mass. App. Ct. at 276 . If Truetta were dissolved in 1958, the winding up period would have ended long before 1977, which might make the June 1977 deed from Sebastian and Ricci to Judith valid, if the equitable doctrine applied. Because no findings of fact have

9

been made as to the dissolution of Truetta and what happened to its property upon dissolution, we remand to the Land Court to address the Driscolls' argument. The judge should make findings as to whether the June 1977 deed was valid, whether the 1991 deed from Judith to Andrew was valid, and whether the first 1996 deed -- which may be the basis for the Santellas' interest in the property -- put Parcel E in common ownership with Parcels C and D. If all three of those deeds were valid, Joseph would have standing to assert a right to redeem Parcel E.

Alternatively, the Driscolls argue that even if Joseph were found not to be the title holder of an interest in Parcel E, they own that parcel by adverse possession. Although Judith is precluded from arguing any ownership, including by adverse possession, as to Parcels C and D, the City does not argue that Judith is barred by the doctrine of issue preclusion from litigating the ownership of Parcel E. The Driscolls allege that Judith has lived on the parcels, using Parcel E as a driveway, since 1976. Additionally, part of the house was built on Parcel E in 1984, and the Driscolls allege that Joseph has lived on the property since 1989. Finally, since 1996, Joseph has been a title owner of Parcels C and D, and Parcel E contains the driveway for, and addition to, the house on one of those parcels, which are alleged to create the claim of adverse possession of Parcel E. As such, we remand for a judge of the

10

Land Court to consider both of the Driscolls' adverse possession claims with regard to Parcel E.

2. Unconstitutional taking. The Land Court judgments in both the 2009 and 2011 litigation, appealed here, were issued prior to the United States Supreme Court's ruling in Tyler v. Hennepin County, 598 U.S. 631 (2023). In Tyler, the Supreme Court held that a municipality violates the takings clause of the Fifth Amendment to the United States Constitution if it takes property to settle a tax debt, then sells it at more than the amount of that debt, and does not pay the excess to the previous owner, or puts it to public use without paying just compensation for the value of the property above that debt. Id. at 639. Although the Driscolls' initial brief was submitted prior to the Tyler decision, they argued there that the City's taking of the property, which was worth more than the alleged tax debt, violated the Fifth Amendment. Because it was decided during the pendency of this appeal, Tyler must be applied to this case. See Lindor v. McDonald's Restaurants of Mass., Inc., 80 Mass. App Ct. 909, 910 (2011), quoting Vassallo v. Baxter Healthcare Corp., 428 Mass. 1, 23 (1998) ("the normal rule of retroactivity . . . 'appl[ies a change in the law] to all claims on which a final judgment has not been entered, or as to which an appeal is pending'").

11

The judge concluded that Joseph could redeem Parcels C and D for the amount of $228,725.98, plus postjudgment interest and legal fees and costs.[5]  The Driscolls claim in their opening

_____

[5] The first Land Court judge who was asked to make a finding of the terms for redemption, including the amount due, indicated that a hearing on the amount would be allowed, requiring the City "promptly to file request for a hearing on a finding setting the terms for redemption of the properties in Cases Nos. 09 TL 139472 and 11 TL 142181."  The City did not do so.  A year later, after the case had been reassigned to the second judge, the City asked the judge to enter a finding, which he did, for the $228,725.98, "upon representation by counsel for the petitioner [City] that the amounts set forth herein are those due and necessary to cover the requirements of law."

Joseph filed a motion asking the court to reconsider its entry of finding and requested an evidentiary hearing.  The judge allowed Joseph to file an affidavit with documentation attached, and he did so, attaching forty-two documents.  The City notified the court that it had concluded there was no new information contained in the filing and that no further written submission would be made by the City.  Upon "review and consideration" of the materials before him, the second judge subsequently denied the motion without holding an evidentiary hearing.

Of course, no evidentiary hearing is required if there are no issues of material fact to resolve.  Trust Ins. Co. v. Commissioner of Ins., 48 Mass. App. Ct. 628, 634-635 (2000).  The Driscolls point to the forty-two exhibits that were attached to Joseph's affidavit that they say raise issues of fact about their tax payments.

The judge ruled without the benefit of briefing that the motion for reconsideration be denied, but without explaining why no evidentiary hearing was required.  (The City did subsequently, in a reply brief in support of its motion for final judgment, include a detailed explanation why it thinks none of the exhibits renders its calculations of taxes due incorrect.  But the judge did not have that before him when he ruled, nor did he address it in any subsequent order.)

12

brief that the property is now worth over $875,000, and in their reply brief that it is worth $1,000,000, something about which we have no information and express no opinion. Although the record before us does not reflect that the City has sold the property, if the value of the property exceeds the amount due the City and the City determines to take the property, it may sell it and return the excess proceeds of the sale of Parcels C and D above the tax debt to Joseph. If the City decides instead to put the property to public use, rather than sell it, the City must pay Joseph compensation for the value of Parcels C and D above the tax liability.

Therefore, should Joseph not redeem the property as described below, and should the City decide to take the property even though it will only receive the tax debt, on remand the judge will be required to craft a new order pursuant to Tyler, 598 U.S. at 639. In addition, any order on remand allowing one or both of the Driscolls to redeem Parcel E must also be consistent with Tyler's holding. See id.

3. _Denial of motion to enlarge time to redeem_. On September 20, 2022, the second Land Court judge denied Joseph's

---

Because this case must be remanded in any event, we think the prudent course is to allow the judge in the first instance to explain his decision not to hold an evidentiary hearing (or to hold an evidentiary hearing should he conclude one is necessary).

13

motion to enlarge time to redeem by ninety days, and he also challenges that denial. We do not find that this was an abuse of discretion. However, until the question of the ownership of Parcel E is resolved, the City will not be able to determine what use they can make of the property, nor will it be able to sell it, as part of the house is on Parcel C and the other part is on Parcel E. As such, we think it is prudent to allow Joseph a further opportunity to redeem Parcels C and D if he can, especially as the City may prefer to receive that money from him rather than sell the property, with the costs that entails, only to be required under Tyler to return what could be most of the proceeds to him. See Tyler, 598 U.S. at 639.

Conclusion. We affirm so much of the judgment dated September 26, 2022, as concludes that Joseph has standing to assert a right to redeem Parcels C and D, and that Judith does not have standing to assert a right to redeem Parcels C and D. We otherwise vacate that judgment, the judgment dated September 2, 2022, and the order dated September 20, 2022, and remand to the Land Court for further proceedings consistent with this memorandum and order, including resolving the issues with respect to the deed from Sebastian and Ricci to Judith, and making findings as to the Driscolls' standing to assert a right to redeem Parcel E.

So ordered.

14

By the Court (Vuono, Rubin &
Smyth, JJ.[6]),

*Paul Little*

Clerk

Entered:  November 18, 2024.

---

[6] The panelists are listed in order of seniority.